**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

**JUN 2 4 2026**

FOR THE DISTRICT OF NEW MEXICO

**ERIK PALTROW**
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 24-CR-00375 JB |
| ) | |
| vs. ) | Count 1:  18 U.S.C. § 371:  Conspiracy to |
| ) | Defraud the United States; |
| **SHERYL WILLIAMS STAPLETON** and ) | |
| **JOSEPH JOHNSON,** ) | Counts 2-6:  18 U.S.C. § 666(a)(1)(B): |
| ) | Bribery Concerning Programs Receiving |
| Defendants. ) | Federal Funds; |
| ) | |
| ) | Counts 7-11:  18 U.S.C. § 666(a)(2): |
| ) | Bribery Concerning Programs Receiving |
| ) | Federal Funds; |
| ) | |
| ) | Counts 12-24:  18 U.S.C. §§ 1341, 1346, |
| ) | and 2:  Mail Fraud; Money and Property |
| ) | and Honest Services Fraud; Aiding and |
| ) | Abetting; |
| ) | |
| ) | Count 25-27:  26 U.S.C. § 7206(1): |
| ) | Fraud and False Statements; |
| ) | |
| ) | Counts 28-36:  18 U.S.C. |
| ) | §§ 1956(a)(1)(A)(ii) and 2:  Money |
| ) | Laundering; Aiding and Abetting; |
| ) | |
| ) | Count 37:  18 U.S.C. § 1956(h): |
| ) | Conspiracy to Commit Money |
| ) | Laundering. |

S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

Introduction

1.    At all times relevant to this Indictment, the defendant, **SHERYL WILLIAMS STAPLETON** was an agent of Albuquerque Public Schools (APS), a local government agency operating in Bernalillo County, in the District of New Mexico.

2.      **STAPLETON** also was a New Mexico State Representative for District 19 in Bernalillo County from 1995 until 2021.  In the New Mexico House of Representatives, **STAPLETON** served on various committees including the Education Committee, and was the majority floor leader from 2017 until 2021.

3.      The United States Department of Education provides hundreds of millions of dollars to state and local school districts for career and technical education (CTE) programs pursuant to the Carl D. Perkins Vocational and Technical Education Act[1] (the Perkins Act).  In New Mexico, Perkins funding goes to the New Mexico Public Education Department (NMPED), and NMPED then allocates the federal funds to school districts across the state.

4.      From at least 2013 through 2021, APS received more than $10,000 in federal Perkins funds from the U.S. Department of Education in each calendar year.

5.      In her official capacity at APS, **STAPLETON** was the Director of the Perkins Project and the CTE Coordinator.  It was her responsibility to allocate and administer the Perkins funds that APS received.

6.      Robotics Management Learning Systems (Robotics) is a Washington, D.C. company owned and operated by **STAPLETON**'s close personal friend, the defendant, **JOSEPH JOHNSON**.  Robotics held the software license and copyright for CyberQuest, a computer learning program that teachers can use in the classroom.

7.      From about July 1, 2013, through June 30, 2020, **STAPLETON** directed approximately 40% of APS's non-personnel grant CTE funding to Robotics for use of and support for the CyberQuest software in APS classrooms.  APS paid Robotics under a series of

---

[1] This term refers to a series of federal acts including the Carl D. Perkins Vocational and Technical Education Act of 1984 and its reauthorizations in 1990, 1998, 2006, and 2018.

procurement exemptions and sole source contracts and, later, APS Purchase Agreement #15278, and a professional services agreement, which **STAPLETON** administered.

a. Specifically, Robotics received approximately the following amounts from APS, most of which originated as federal Perkins funds, as described below:

| Year | Amount APS Paid to Robotics Overall | Amount of Perkins Funds APS Paid to Robotics |
|---|---|---|
| 04/17/2013 to 12/31/2013 | $295,500 | $135,500 |
| 2014 | $410,000 | $290,000 |
| 2015 | $348,000 | $348,000 |
| 2016 | $428,000 | $348,000 |
| 2017 | $388,000 | $308,000 |
| 2018 | $388,000 | $348,000 |
| 2019 | $266,950 | $266,950 |
| 2020 | $560,000 | $329,500 |
| 2021 | $167,100 | $144,600 |
| Total 2013-2021 | $3,251,550 | $2,518,550 |

b. The teachers who used CyberQuest wrote the content for their classes, and Robotics contracted with a third party to maintain the software and to train the users. Until 2019, the third party received payments directly from APS for its work regarding CyberQuest.

c. From 2013 through 2021, Robotics spent about $174,915 on personnel other than **JOHNSON**, and paid the third party contractor about $182,180 to support CyberQuest. Including miscellaneous expenses and unclassified withdrawals, Robotics' business expenses for that time period totaled about $806,558, leaving the remaining 73% of the funds Robotics received from APS – approximately $2,444,992 – available for other uses.

3

8.    **STAPLETON** reviewed and approved Robotics' invoices, and directed other APS employees under her supervision to approve those invoices, thereby certifying that APS had received the services listed in the invoices and certifying that APS should issue payments as requested by the invoices.

9.    APS mailed its checks to Robotics to a post office box in Albuquerque. **STAPLETON** personally retrieved the checks from the post office box and deposited them into the Robotics bank account.

10.    **STAPLETON** was provided with blank checks for the Robotics business checking account.  Approximately 234 Robotics checks were written for **STAPLETON's** benefit, totaling approximately $1,152,506.  In this manner, **STAPLETON** obtained approximately 35% of all funds APS paid to Robotics.  Specifically:

    a.    Approximately 60 checks totaling about $286,772.20 were written from Robotics to S. Williams & Associates, a company **STAPLETON** owned and controlled.

    b.    Approximately 56 checks totaling about $313,123.48 were written from Robotics to Taste of the Caribbean, an Albuquerque restaurant that **STAPLETON** owned and her family members operated.

    c.    Approximately 105 checks totaling about $479,960.86 were written from Robotics and deposited into accounts for the Ujima Foundation, a nonprofit entity that **STAPLETON** and **JOHNSON** were listed as operating together.

        i.    **STAPLETON** and **JOHNSON** were listed as operating Ujima Foundation as a 501(c)(3) nonprofit corporation nominally dedicated to addressing educational, social, economic and health issues facing people of color in New Mexico.

    ii.  **STAPLETON** and **JOHNSON** opened and maintained a bank account in the name of Ujima Foundation/Charlie Morrisey Foundation, for which they shared signature authority.

    iii.  In annual reports filed with the New Mexico Secretary of State's Office and in Forms 990-EZ filed with the IRS, **STAPLETON** identified members of the Ujima Foundation board of directors. Several of the individuals they identified were not affiliated with Ujima Foundation and did not know they were listed as board members.

    iv.  Over the time period in which **STAPLETON** deposited about $479,960.86 into the Ujima accounts, Ujima Foundation distributed about $46,700 in scholarships. The majority of the remaining funds went to **STAPLETON**'s benefit or was withdrawn in cash.

  d.  **STAPLETON** wrote about 12 checks totaling about $72,649.16 from Robotics to other parties providing goods and services to **STAPLETON**, including for a remodeling of **STAPLETON**'s house.

11. The 233 checks from Robotics paid to **STAPLETON**'s benefit, which totaled approximately $1,152,506, were not business expenses for Robotics. Instead, **STAPLETON** accepted the checks and the money intending to be influenced and rewarded in connection with the APS contracts with and payments to Robotics.

12. Numerous federal and state regulations and policies prohibit a governmental employee involved in the selection, award, or administration of a contract from receiving any financial benefits, including bribes, kickbacks, gifts, and anything of monetary value, from a contractor, including:

     a.  Title 2 C.F.R. § 200.318 et seq., general procurement standards for non-Federal entities receiving federal funds;

     b.  The New Mexico Governmental Conduct Act, NMSA 1978 § 10-16-1 et seq.; and

     c.  The Albuquerque Public Schools Employee Code of Conduct.

13.     The New Mexico Financial Disclosure Act, NMSA 1978 § 10-16A-1 et seq., requires that a person holding state legislative office must disclose all sources of gross income over $5,000 each calendar year that person holds office. Despite this obligation, **STAPLETON** never disclosed the substantial income she received from Robotics.

Count 1:  Conspiracy to Defraud the United States

14.     Paragraphs 1 through 13 are hereby incorporated by reference.

15.     From about 2013, and continuing thereafter until about July 2021, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, knowingly and willfully conspired and agreed together, and acted interdependently with each other, to defraud the United States of and concerning its governmental functions and rights to have its business and its affairs, and particularly the transaction of the official business of the U.S. Department of Education, conducted honestly and impartially, free from corruption, fraud, improper and undue influence, and dishonesty.

Manner and Means

16.     It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the U.S. Department of Education in that the defendants would:

     a.  Conceal their financial relationship by omitting that relationship from required certifications and disclosures;

6

b.  Sponsor and advocate for the passage of state legislation and capital outlays directing funding to APS for CTE programs;

c.  Allocate and direct APS CTE funding to Robotics;

d.  Invoice for, approve, facilitate, and deposit payments to Robotics in excess of services rendered and in excess of contract limits;

e.  Share and distribute proceeds using blank checks and pre-signed checks;

f.  Conceal distribution of proceeds by passing them through corporate bank accounts, including accounts in the names of S. Williams & Associates; Taste of the Caribbean; and Ujima Foundation;

g.  Maintain the Ujima Foundation, a registered nonprofit organization, as a vehicle to conceal and distribute proceeds; and

h.  Conceal income from disclosure on Internal Revenue Service tax forms and submissions.

Overt Acts

17.  In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of New Mexico and elsewhere:

a.  On or about January 15, 2019, **STAPLETON** co-sponsored House Bill 91, the Career Technical Education Pilot Project, which the legislature passed and the governor signed into law on March 15, 2019.  This legislation created a new career technical education fund and caused NextGen state flow-through grant funds to pass through NMPED to the APS CTE department.  Of these funds, Robotics received approximately $108,000 via APS contract #15278 and the Professional Service Agreement;

7

b.  On or about January 24, 2019, **JOHNSON** submitted a proposal in response to APS Request for Proposals (RFP) 19-032 RMS, offering to provide CyberQuest software, training, and support to APS and certifying that there was no conflict of interest;

c.  On or about April 4, 2019, after **STAPLETON**'s request, the legislature passed and the governor signed into law SB 280, appropriating in relevant part $1,628,227 in capital outlay funds to APS for CTE programs;

d.  On or about June 4, 2019, APS and **JOHNSON** on behalf of Robotics entered into Professional Service Agreement #15278 for the provision of CyberQuest software, maintenance and technical support, professional development and software customizations, and certified that there was no conflict of interest;

e.  On or about April 20, 2020, APS and **JOHNSON** on behalf of Robotics added an Amendment to Professional Service Agreement #15278, extending the contract;

f.  On or about May 20, 2021, **STAPLETON** on behalf of APS and **JOHNSON** on behalf of Robotics entered into a Professional Service Agreement for the provision of CyberQuest workshops and training;

g.  On or about July 21, 2021, **JOHNSON** on behalf of Robotics signed a second Amendment to Professional Service Agreement #15278, purporting to extend the contract;

h.  On or about the dates listed below, **STAPLETON** directed APS to issue purchase orders to encumber the funds for RMLS and approved them, each direction constituting a separate overt act:

8

| Purchase Order Date | Purchase Order # | Amount |
|---|---|---|
| June 13, 2019 | 181921249 | $266,950 |
| October 28, 2019 | 192008402 | $64,200 |
| February 3, 2020 | 192014614 | $145,000 |
| January 28, 2020 | 192013705 | $144,000 |
| April 17, 2020 | 192020707 | $85,500 |
| April 20, 2020 | 192021379 | $145,000 |
| January 27, 2021 | 202108937 | $208,200 |
| June 4, 2021 | 202110227 | $60,000 |

i. **JOHNSON** created and **STAPLETON** approved invoices from Robotics to

APS, as described below, each invoice constituting a separate overt act:

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| June 3, 2019 | 903715 | $266,950 |
| February 2, 2020 | 916110 | $145,000 |
| February 6, 2020, February 8, 2020, February 11, 2020, and February 27, 2020 | 916586 | $28,250 |
| March 28, 2020 | 917917 | $19,500 |
| April 30, 2020 | 919058 | $88,750 |
| May 7, 2020 | 919483 | $15,000 |
| May 19, 2020 | 920349 | $85,500 |
| June 1, 2020, and June 3, 2020 | 921597 | $33,000 |
| September 4, 2020 | 923877 | $145,000 |
| March 14, 2021 | 931894 | $7,500 |
| April 6, 2021 | 933185 | $9,000 |

9

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| March 25, 2021 | 933746 | $74,400 |
| June 18, 2021, June 21, 2021, and June 23, 2021 | 936513 | $76,200 |

j. On or about June 23, 2021, **STAPLETON** and **JOHNSON** created and approved invoices 8240, 8241, and 8242 from Robotics to APS, each in the amount of $7,500 and each constituting an overt act;

k. On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the deposits of the following checks into the Robotics bank account, each constituting a separate overt act:

| Deposited On or About | APS Check Number | Amount |
|---|---|---|
| June 18, 2019 | 903715 | $266,950 |
| March 2, 2020 | 916110 | $145,000 |
| March 27, 2020 | 916586 | $28,250 |
| April 20, 2020 | 917917 | $19,500 |
| May 21, 2020 | 919058 | $88,750 |
| May 21, 2020 | 919483 | $15,000 |
| June 19, 2020 | 920349 | $85,500 |
| July 14, 2020 | 921597 | $33,000 |
| October 13, 2020 | 923877 | $145,000 |
| May 11, 2021 | 931894 | $7,500 |
| May 11, 2021 | 933185 | $9,000 |
| May 11, 2021 | 933746 | $74,400 |
| July 6, 2021 | 936513 | $76,200 |

l.  On or about the dates listed below, **STAPLETON** and **JOHNSON** provided, issued, and deposited the following checks from the Robotics bank account into accounts in **STAPLETON**'s control, each constituting a separate overt act:

| Robotics Check # | Check Dated | Deposited | Payee | Amount |
|---|---|---|---|---|
| 4072 | April 27, 2020 | May 1, 2020 | Charlie Morrisey Foundation | $3,800 |
| 4070 | May 14, 2020 | May 15, 2020 | Charlie Morrisey Foundation | $5,000 |
| 4073 | June 5, 2020 | June 12, 2020 | Ujima Foundation | $8,000 |
| 4076 | July 1, 2020 | July 14, 2020 | Ujima Foundation | $8,000 |
| 4075 | August 17, 2020 | August 24, 2020 | Ujima Foundation | $8,000 |
| 4081 | September 15, 2020 | October 13, 2020 | Ujima Foundation | $8,000 |
| 4080 | December 1, 2020 | December 21, 2020 | Charlie Morrisey Foundation | $8,000 |

m.  On or about January 31, 2020, **STAPLETON** filed a financial disclosure statement with the New Mexico Office of the Secretary of State, certifying that APS was her sole source of income in 2019;

n.  On or about the dates listed below, **STAPLETON** filed tax returns, IRS Form 1040, each constituting a separate overt act, in which she omitted income she received directly and indirectly from **JOHNSON** and Robotics, and therefore received tax refunds:

| Tax Year | Date Filed | Total Income Reported | Refund Amount |
|----------|------------|-----------------------|---------------|
| 2015 | May 21, 2018 | $39,123 | $7,231 |
| 2016 | May 18, 2020 | -$11,500 | $14,553 |
| 2017 | July 15, 2020 | -$1,922 | $13,496 |
| 2018 | August 20, 2020 | $7,178 | $10,855 |

o. On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the filing of an IRS Form 990EZ on behalf of Ujima Foundation, each containing materially false and fraudulent representations and each constituting a separate overt act:

| Tax Year | Date Filed |
|----------|------------|
| 2017 | January 22, 2020 |
| 2018 | February 18, 2021 |
| 2019 | February 18, 2021 |

p. On or about the dates listed below, **JOHNSON** filed tax returns, IRS Form 1040, omitting income he received from Robotics and APS, each containing materially false and fraudulent representations, and each constituting a separate overt act:

| Tax Year | Date Filed |
|----------|------------|
| 2013 | May 14, 2019 |
| 2014 | December 17, 2015 |
| 2020 | October 20, 2021 |

In violation of 18 U.S.C. § 371.

<u>Count 2-6:  Bribery Concerning Programs Receiving Federal Funds</u>

18. Paragraphs 1 through 17 are hereby incorporated by reference.

19. At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020, and ending December 31, 2020.  Defendant was

an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs. On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, did corruptly accept and agree to accept a thing of value from JOSEPH JOHNSON, to wit: the Robotics Management Learning Systems business bank account checks identified below, intending to be influenced and rewarded in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|-------|--------------------|-------------|-----------|--------|
| 2 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 3 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 4 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 5 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 6 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

In violation of 18 U.S.C. § 666(a)(1)(B).

Counts 7-11:  Bribery Concerning Programs Receiving Federal Funds

20.    Paragraphs 1 through 17 are hereby incorporated by reference.

21.    At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020, and ending December 31, 2020. SHERYL WILLIAMS STAPLETON was an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs. On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **JOSEPH JOHNSON**, did corruptly give, offer, and agree to give a thing of value to STAPLETON, to wit:  the Robotics Management Learning Systems business bank account

13

checks identified below, intending to influence and reward her in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|---|---|---|---|---|
| 7 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 8 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 9 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 10 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 11 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

In violation of 18 U.S.C. § 666(a)(2).

<u>Counts 12-24:  Mail Fraud; Money and Property and Honest Services Fraud</u>

22.     Paragraphs 1 through 17 are hereby incorporated by reference.

23.     From on or about 2013, and continuing to about July 2021, in the District of New Mexico, and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, devised and intended to devise a scheme and artifice (1) to defraud the citizens of New Mexico, Albuquerque Public Schools, and the U.S. Department of Education of money and property and (2) to defraud and deprive the same of their right to the honest and faithful services of **STAPLETON** through bribery, kickbacks, and the concealment of material information.

24.     The purpose of the scheme and artifice was for **STAPLETON** to and **JOHNSON** to obtain money and property and for **STAPLETON** to secretly use her official positions to enrich herself by soliciting and accepting gifts, payments, and other things of value from **JOHNSON** in exchange for favorable official action, and for **JOHNSON** to enrich himself by secretly obtaining favorable official action for himself and his company, Robotics Management Learning Systems, through corrupt means.

25.     The scheme and artifice was carried out in the following manner and means, among others:

14

a. **STAPLETON** solicited and accepted gifts, payments, and other things of value totaling approximately $1,152,506 from **JOHNSON**.

b. **STAPLETON** provided favorable official action on behalf of **JOHNSON** as requested and as opportunities arose, including sponsoring, advocating for, and requesting legislation and capital outlays; requesting exemptions from procurement and sole source procurements; and creating, approving, and directing others to enter purchase orders and approve invoices in excess of contract limits and in excess of services rendered.

c. **STAPLETON** took steps to hide, conceal, and cover up her activity and the nature and scope of her dealings with **JOHNSON**, including omitting the income she received from **JOHNSON** from her financial disclosures and tax returns, signing **JOHNSON**'s name on checks, and passing proceeds through business entities she controlled.

d. **JOHNSON** took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with **STAPLETON**, including by certifying a lack of conflict of interest on proposals and agreements, omitting income from Robotics on his tax returns, providing blank Robotics checks, pre-signing checks to be used for **STAPLETON**'s benefit, and passing proceeds through business entities **STAPLETON** controlled.

26. On or about the dates listed below, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, caused

another person to mail checks from APS to Robotics through the United States Postal Service, as described below:

| Count | Deposited On or About | APS Check Number | Amount |
|---|---|---|---|
| 12 | June 18, 2019 | 903715 | $266,950 |
| 13 | March 2, 2020 | 916110 | $145,000 |
| 14 | March 27, 2020 | 916586 | $28,250 |
| 15 | April 20, 2020 | 917917 | $19,500 |
| 16 | May 21, 2020 | 919058 | $88,750 |
| 17 | May 21, 2020 | 919483 | $15,000 |
| 18 | June 19, 2020 | 920349 | $85,500 |
| 19 | July 14, 2020 | 921597 | $33,000 |
| 20 | October 13, 2020 | 923877 | $145,000 |
| 21 | May 11, 2021 | 931894 | $7,500 |
| 22 | May 11, 2021 | 933185 | $9,000 |
| 23 | May 11, 2021 | 933746 | $74,400 |
| 24 | July 6, 2021 | 936513 | $76,200 |

In violation of 18 U.S.C. §§ 1341, 1346, and 2.

### Counts 25-27:  Fraud and False Statements

27.     On or about the dates below, in the District of New Mexico, in Bernalillo County, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service false U.S. Individual Income Tax Returns, Forms 1040, for the tax years identified below, verified by written declarations that the returns were made under the penalties of perjury, and which the defendant, **SHERYL WILLIAMS STAPLETON**, did not believe to be true and correct as to every material matter.

Those tax returns reported that the defendant had zero taxable income, whereas, as the defendant knew, she had received the approximate amounts of income described below from Robotics:

| Count | Date | Tax Year | Approximate amount of income received from Robotics |
|---|---|---|---|
| 25 | May 9, 2018 | 2015 | $186,553.94 |
| 26 | July 9, 2020 | 2017 | $133,392.04 |
| 27 | August 6, 2020 | 2018 | $150,056.70 |

In violation of 26 U.S.C. § 7206(1).

Counts 28-36:  Money Laundering

28.    On or about the dates listed below, in the District of New Mexico, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, writing and depositing checks from the Robotics business account as described below, which involved the proceeds of a specified unlawful activity, that is, violations of 18 U.S.C. §§ 666 and 1341, while acting with the knowledge that the transaction was designed in whole or part to disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Check Dated | Check Posted | Robotics Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 28 | August 19, 2019 | September 9, 2019 | 4071 | Ujima Foundation | $1,500 |

| Count | Check Dated | Check Posted | Robotics Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 29 | April 27, 2020 | May 1, 2020 | 4072 | Charlie Morrisey Foundation | $3,800 |
| 30 | May 14, 2020 | May 15, 2020 | 4070 | Charlie Morrisey Foundation | $5,000 |
| 31 | June 5, 2020 | June 12, 2020 | 4073 | Ujima Foundation | $8,000 |
| 32 | July 1, 2020 | July 14, 2020 | 4076 | Ujima Foundation | $8,000 |
| 33 | August 17, 2020 | August 24, 2020 | 4075 | Ujima Foundation | $8,000 |
| 34 | September 15, 2020 | October 13, 2020 | 4081 | Ujima Foundation | $8,000 |
| 35 | December 1, 2020 | December 21, 2020 | 4080 | Charlie Morrisey Foundation | $8,000 |
| 36 | July 1, 2021 | July 6, 2021 | 4077 | Ujima Foundation | $8,000 |

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

### Count 37:  Conspiracy to Commit Money Laundering

29.    Paragraphs 1 through 17 are hereby incorporated by reference.

30.    From on or about 2013, and continuing to about July 2021, in the District of New Mexico, and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, did knowingly combine, conspire, and agree to act interdependently with each other to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a.    to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Theft or Bribery Concerning Programs Receiving Federal Funds contrary to 18 U.S.C. § 666 and Mail Fraud

18

contrary to 18 U.S.C. § 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Manner and Means

31.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a.  It was part of the conspiracy that the defendants concealed their continuing financial relationship in order to facilitate the flow of APS funds to Robotics;

b.  It was further part of the conspiracy that the defendants created and approved Robotics invoices to APS in excess of services actually rendered;

c.  It was further part of the conspiracy that the defendants wrote, endorsed and deposited checks from the Robotics bank account to entities under **STAPLETON**'s control, including S. Williams & Associates, Taste of the Caribbean, and Ujima Foundation, and to third parties for **STAPLETON**'s benefit;

d.  It was further part of the conspiracy that the defendants created, maintained, and used Ujima Foundation and its bank accounts in order to conceal the source, ownership and control of funds as charitable activity;

e.  It was further part of the conspiracy that the defendants concealed the flow of funds from APS to Robotics to **STAPLETON** by filing false tax returns and failing to file tax returns.

19

In violation of 18 U.S.C. § 1956(h).

## Forfeiture Allegation 1

Counts 2 through 24 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

Upon conviction of any offense in violation of 18 U.S.C. §§ 666 or 1341, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property which constitutes or is derived from proceeds traceable to the commission of the offense.

The property to be forfeited to the United States includes but is not limited to the following:

MONEY JUDGMENT:

A sum of money, representing all property which constitutes or is derived from proceeds traceable to the commission of the offense.

PERSONAL PROPERTY:

1. Approximately $474,845.38 in funds from Bank of America accounts ending 7636, 7924, 3724, 0844, and 0857;

2. Approximately $2,750.08 in funds from Bank of America account ending 3753; and

3. A 2017 VOLVO XC60, VIN: YV440MDR9H2027406.

SUBSTITUTE ASSETS:

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

A. Cannot be located upon exercise of due diligence;

B. Has been transferred or sold to, or deposited with, a third person;

C. Has been placed beyond the jurisdiction of the Court;

D. Has been substantially diminished in value; or

E. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

Forfeiture Allegation 2

Counts 28 through 37 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States.

Upon conviction of any offense in violation of 18 U.S.C. § 1956, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any property involved in the offense, and any property traceable to such property.

The property to be forfeited to the United States includes but is not limited to the following:

MONEY JUDGMENT:

A sum of money, representing all property involved in the offense and any property traceable to such property.

PERSONAL PROPERTY:

1. Approximately $474,845.38 in funds from Bank of America accounts ending 7636, 7924, 3724, 0844, and 0857;

2. Approximately $2,750.08 in funds from Bank of America account ending 3753; and

21

3.  A 2017 VOLVO XC60, VIN: YV440MDR9H2027406.

SUBSTITUTE ASSETS:

If any of the above-described forfeitable property, as a result of any act or omission of the

Defendant:

A.  Cannot be located upon exercise of due diligence;

B.  Has been transferred or sold to, or deposited with, a third person;

C.  Has been placed beyond the jurisdiction of the Court;

D.  Has been substantially diminished in value; or

E.  Has been commingled with other property which cannot be subdivided without

    difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described above.

A TRUE BILL:

_____/s/_____
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

_____

22