IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 24-375 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| SHERYL WILLIAMS STAPLETON and | ) | |
| JOSEPH JOHNSON, | ) | |
| | ) | |
| Defendants. | | |

## <u>UNITED STATES' REQUESTED JURY INSTRUCTIONS</u>

Pursuant Fed. R. Crim. P. 30, the United States respectfully requests that the Court include the following in its instructions to the jury. The United States further requests permission to submit such additional instructions as may become appropriate during trial. Except as otherwise noted, references to a "Pattern Jury Instruction" are references to instructions from the Tenth Circuit's Pattern Jury Instructions.

1. Pattern Jury Instruction 1.01-1.02 – Preliminary Instructions Before Trial

2. Pattern Jury Instruction 1.03 – Introduction to Final Instructions

3. Pattern Jury Instruction 1.04 – Duty to Follow Instructions

4. Pattern Jury Instruction 1.05 – Presumption of Innocence – Burden of Proof – Reasonable Doubt

5. Pattern Jury Instruction 1.06 – Evidence – Defined

6. Pattern Jury Instruction 1.07 – Evidence – Direct and Circumstantial – Inferences

7. Pattern Jury Instruction 1.08 – Credibility of Witnesses

8. Pattern Jury Instruction 1.08.1 – Non-Testifying Defendant (if applicable)

1

9.    Pattern Jury Instruction 1.18 – On or About

10.   Pattern Jury Instruction 1.41 – Summaries and Charts

11.   Pattern Jury Instruction 1.19 – Caution — Consider only Crime Charged

12.   Pattern Jury Instruction 1.22 – Multiple Defendants — Multiple Counts

13.   Pattern Jury Instruction 1.20 – Caution – Punishment

14.   Pattern Jury Instruction 1.25 – Voluntariness of Statement by Defendant

15.   Pattern Crim. Jury Instr. 5th Cir. 2.15B (2024) – Elements of Conspiracy to Defraud the United States

16.   Fed. Crim. Jury Instr. 7th Cir. 666(a)(1)(B) – ("Accepting a Bribe – Elements")(2025 Revisions)

17.   Instruction on meaning of the term "official act"

18.   Fed. Crim. Jury Instr. 7th Cir. 666(a)(2)("Paying a Bribe – Elements")(2025 Revisions)

19.   Pattern Jury Instruction 2.56 – Mail Fraud – 18 U.S.C. § 1341

20.   Instruction on meaning of the term "scheme to defraud"

21.   Pattern Jury Instruction 2.03 – False Statements on Income Tax Return – 26 U.S.C. § 7206(1)

22.   Pattern Jury Instruction 2.73.1 – Money Laundering Concealing Illegal Proceeds –18 U.S.C § 1956(a)(1)(B)(i)

23.   Conspiracy to commit money laundering (elements) – 18 U.S.C. § 1956(h)

24.   Pattern Jury Instruction 1.37 – Knowingly

25.   Pattern Jury Instruction 1.01 – Reading of Indictment

26.   Pattern Jury Instruction 1.23 – Duty to Deliberate – Verdict Form

/ / /

/ / /

/ / /

2

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

*/s/ Filed Electronically 7/9/26*
FRED J. FEDERICI
FREDERICK T. MENDENHALL
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 346-7274

I HEREBY CERTIFY that on July 9, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Filed Electronically*
FRED J. FEDERICI
Assistant U.S. Attorney

3

**UNITED STATES' REQUESTED INSTRUCTION NO. 1[1]**

Members of the Jury:

At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the United States as the prosecution or the government. The United States is represented by Assistant United States Attorneys Fred Federici and Frederick Mendenhall. Defendant Sheryl Williams Stapleton is represented by her lawyers Ahmad Assed and Ryan Villa. Defendant Joseph Johnson is represented by his lawyers Nicole Moss and Marshall Ray.

In sum, the indictment alleges that, at all times relevant to the charges, Defendant Stapleton was an agent of Albuquerque Public Schools (APS).[2] She was also a New Mexico State representative from 1995 until 2021.[3] The indictment alleges that the U.S. Department of Education provides federal funding for Career and Technical Education (CTE) programs pursuant to the Carl D. Perkins Vocational and Technical Education Act (the Perkins Act). In New Mexico, Perkins funding goes to the New Mexico Public Education Department (NMPED), which allocates the federal funds to school districts cross the state.[4] In her official capacity at APS, Defendant Stapleton was the Director of the

---

[1] Tenth Circuit Pattern Jury Instructions Criminal 1.01-1.02 (2026) (Preliminary Instructions Before Trial) (modified for case specific text and use of "United States" instead of "government").
[2] Paragraph 1.
[3] Paragraph 2.
[4] Paragraph 3.

Perkins Project and the CTE Coordinator.[5] It was her responsibility to allocate and administer the Perkins funds that APS received.[6]

The indictment also alleges that Defendant Johnson owned and operated a Washington D.C. company called Robotics Management Learning Systems (Robotics), and that Robotics held the software license and copyright for Cyberquest, a computer learning program that teachers can use in the classroom.[7] The allegations are that Defendant Stapleton directed APS grant CTE funding to Robotics for the use and support of its Cyberquest software in APS classrooms.[8] APS paid Robotics under a series of procurement exemptions, sole source contracts and later, a Purchase Agreement and a professional services agreement, which Sheryl Stapleton administered.[9] From 2013 to 2021, APS overall paid Robotics a total of $3,251,550, of which $2,518,550 were Perkins funds.[10] The indictment alleges that Defendant Stapleton reviewed and approved Robotics' invoices, and directed other APS employees to approve those invoices.[11]

The indictment alleges that APS mailed Robotics its checks to a post office box in Albuquerque, and that Defendant Stapleton personally retrieved the checks and deposited them into Robotics' bank account.[12] The indictment alleges that Defendant Johnson provided blank checks to

---

[5] Paragraph 5.
[6] Paragraph 5.
[7] Paragraph 6.
[8] Paragraph 7.
[9] Paragraph 7.
[10] Paragraph 7a.
[11] Paragraph 8.
[12] Paragraph 9.

Stapleton and that, using Robotics' checks, Defendant Stapleton wrote approximately 233 checks from Robotics for her own benefit, totaling approximately $1,152,506.[13]

The indictment alleges that 60 checks totaling about $286,722.20 were written from Robotics to S. Williams & Associates, a company that Stapleton owned and controlled; about 56 checks totaling about $313,123.48 were written from Robotics to Taste of the Caribbean, a restaurant that Stapleton owned and her family operated; about 104 checks totaling about $479,960.86 were written from Robotics to Ujima Foundation, a nonprofit entity for which Defendant Stapleton and Defendant Johnson maintained a bank account in which they shared signature authority, and about 11 checks totaling about $72,649.16 were written from Robotics to provide goods and services to Defendant Stapleton, including for remodeling her house.[14]

The indictment alleges that the checks from Robotics paid to Defendant Stapleton's benefit, totaling approximately $1,152,506 were not Robotics business expenses, but instead checks and money that Defendant Stapleton accepted intending to be influenced and rewarded in connection with APS's contracts with and payments to Robotics.[15] The indictment alleges that numerous federal and state regulations prohibit a governmental employee involved in the selection, award, or administration of a contract from receiving any financial benefits, including bribes, kickbacks, gifts, and anything of monetary value.[16] The indictment also alleges that despite the New Mexico Financial Disclosure Act's

---

[13] Paragraph 10.
[14] Paragraph 10 a – d.
[15] Paragraph 12.
[16] Paragraph 12.

requirement that a person holding state legislative office must disclose all sources of gross income over $5,000 a year, Defendant Stapleton never disclosed the income she received from Robotics.[17]

Count 1 of the indictment charges Defendant Stapleton and Defendant Johnson with conspiring together to defraud the United States of its governmental functions and its right to have the official business of the U.S. Department of Education conducted honestly and impartially.[18] The indictment alleges that the defendants did this by, among other things, omitting their financial relationship from required certifications and disclosures, invoicing for and approving payments to Robotics in excess of services rendered and in excess of contract limits, sharing and distributing proceeds using blank checks, concealing proceeds by passing them through corporate bank accounts, maintaining the Ujima Foundation as a vehicle to conceal and distribute proceeds, and concealing income from disclosure on Internal Revenue Service tax forms and submissions.[19]

Counts 2 through 6 charge Defendant Stapleton with bribery concerning programs receiving federal funds. Those counts allege that Defendant Stapleton corruptly accepted Robotics' bank checks from Defendant Johnson intending to be influenced and rewarded in connection with a series of APS transactions involving $5,000 or more.

Counts 7 through 11 also charge Defendant Johnson with bribery concerning programs receiving federal funds. Those counts allege that Defendant Johnson corruptly gave Robotics' bank checks to Defendant Stapleton intending to influence and reward her in connection with a series of APS transactions involving $5,000 or more.

---

[17] Paragraph 13.
[18] Paragraph 15.
[19] Paragraph 16.

Counts 12 through 24 charge Defendant Stapleton and Defendant Johnson with mail fraud. The charges allege that the defendants devised a scheme to defraud to (1) deprive the United States government and Albuquerque Public Schools (APS) of money and property, and (2) deprive the citizens of New Mexico, APS, and the U.S. Department of Education of their right to the honest and faithful services of Defendant Stapleton through bribery and kickbacks. The charges allege that the means by which the defendants committed these crimes included, among other things, Defendant Stapleton accepting payments totaling approximately $1,152,506 from Defendant Johnson, Defendant Stapleton providing favorable official action on Defendant Johnson's behalf as requested and as opportunities arose, which included approving purchase orders and invoices in excess of contract limits and in excess of services rendered, Defendant Stapleton omitting the income she received from Defendant Johnson on her financial  disclosures and tax returns, and Defendant Johnson certifying a lack of conflict of interest on proposals and agreements, omitting Robotics' income on his tax returns, providing blank Robotics' checks, and passing proceeds through entities that Defendant Stapleton controlled.

Counts 25 through 27 charge Defendant Stapleton with fraud and false statements for willfully causing to be filed with the Internal Revenue Service false U.S. Individual Income Tax returns, for the tax years 2015, 2017 and 2018, verified by declarations that were made under penalties of perjury. The charges allege that the tax returns that Defendant Stapleton filed for tax years 2015, 2017, and 2018 each reported that Defendant Stapleton had zero taxable income when she knew that she had received $186,553.94 in income from Robotics for the tax year 2015, $133,391.04 in income from Robotics for the tax year 2017, and $150,056.70 in income from Robotics for the tax year 2018 .

8

Counts 28 through 36 charge Defendant Stapleton and Defendant Johnson with money laundering. The charges allege that the defendants wrote checks from the Robotics business account that they knew were the proceeds of bribery and mail fraud and deposited them with knowledge that the transaction was designed to disguise the source of the proceeds of the mail fraud and bribery.

Count 37 charges the defendants with conspiring to commit money laundering.

The indictment is simply the description of the charges made by the United States against the defendants; it is not evidence of guilt or anything else. The defendants pleaded not guilty and are presumed innocent. A defendant may not be found guilty by you unless all twelve of you unanimously find that the United States has proved the defendant's guilt beyond a reasonable doubt. There are multiple defendants in this case and you will have to give separate consideration to the case against each defendant as each is entitled to individual consideration.

The first step in the trial will be the opening statements. The United States in its opening statement will tell you about the evidence that it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

After the United States' opening statement, the defendants' attorneys may make an opening statement.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate.

The United States will offer its evidence. After the United States' evidence, the defendants' lawyers may present evidence, but they are not required to do so. I remind you that a defendant is

9

presumed innocent, and it is the United States that must prove a defendant's guilt beyond a reasonable doubt. If a defendant submits evidence, the United States may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer, or to an answer by a witness. This simply means the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Sometimes we will talk briefly at the bench. But some of these conferences will take more time so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject. After you have heard all the evidence on both sides, the United States and the defense will each be given time for their final arguments.

The final part of the trial occurs when I instruct you on the rules of law that you are to use in reaching your verdict.

10

During the course of the trial, I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note-taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

During the course of the trial, you should not talk with any witness or with the defendant or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else.  Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom until the verdict is received.  Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information or do any research on your

11

own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said.  This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun, you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Mr. _____, you may present the opening statement for the United States.

**UNITED STATES' REQUESTED INSTRUCTION NO. 2[20]**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other.  I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case – for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the jury room, so you need not take notes.

---

[20] Tenth Circuit Pattern Jury Instructions Criminal 1.03 (2026) (Introduction to Final Instructions).

**UNITED STATES' REQUESTED INSTRUCTION NO. 3[21]**

You, as jurors, are the judges of the facts. But in determining what actually happened –that is, in reaching your decision as to the facts – it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

---

[21] Tenth Circuit Pattern Jury Instructions Criminal 1.04 (2026) (Duty to Follow Instructions).

**UNITED STATES' REQUESTED INSTRUCTION NO. 4[22]**

The United States has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require the defendant to prove her innocence or produce any evidence at all.  The United States has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the United States' proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

---

[22] Tenth Circuit Pattern Jury Instructions Criminal 1.05 (2026) (Presumption of Innocence – Burden of Proof – Reasonable Doubt) (modified to substitute "government" with "United States" and "defendant" with "he" and "him.").

**UNITED STATES' REQUESTED INSTRUCTION NO. 5[23]**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[23] Tenth Circuit Pattern Jury Instructions Criminal 1.06 (2026) (Evidence—Defined).

**UNITED STATES' REQUESTED INSTRUCTION NO. 6[24]**

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts that point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case.

---

[24] Tenth Circuit Pattern Jury Instructions Criminal 1.07 (2026) (Evidence — Direct and Circumstantial — Inferences).

**UNITED STATES' REQUESTED INSTRUCTION NO. 7[25]**

I remind you that it is your job to decide whether the United States has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant], who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.  In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the United States or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent mis-recollection – like failure of recollection – is not uncommon.

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

---

[25] Tenth Circuit Pattern Jury Instructions Criminal 1.08 (2026) (Credibility of Witnesses) (modified to substitute "government" with "United States).

18

[The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

**UNITED STATES' REQUESTED INSTRUCTION NO. 8**[26]

The defendant did not testify and I remind you that you cannot consider a defendant's decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country. It is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

---

[26] Tenth Circuit Pattern Jury Instructions Criminal 1.08.1 (2025) (Non-testifying Defendant) (modified to replace "his" with "defendant").

20

**UNITED STATES' REQUESTED INSTRUCTION NO. 9[27]**

You will note that the indictment charges that the crimes were committed on or about certain dates.  The United States must prove beyond a reasonable doubt that the defendant committed each crime reasonably near those dates.

---

[27] Tenth Circuit Pattern Jury Instructions Criminal 1.18 (2025) (On or About) (modified to replace "government" with "United States").

**UNITED STATES' REQUESTED INSTRUCTION NO. 10[28]**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

---

[28] Tenth Circuit Pattern Jury Instructions Criminal 1.41 (2025) (Summaries and Charts).

**UNITED STATES' REQUESTED INSTRUCTION NO. 11[29]**

You are here to decide whether the United States has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

---

[29] Tenth Circuit Pattern Jury Instructions Criminal 1.19 (2025) (Caution — Consider only Crime Charged) (modified to replace "government" with "United States").

**UNITED STATES' REQUESTED INSTRUCTION NO. 12[30]**

A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

---

[30] Tenth Circuit Pattern Jury Instructions Criminal 1.22 (2026) (Multiple Defendants — Multiple Counts).

## UNITED STATES' REQUESTED INSTRUCTION NO. 13[31]

If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

---

[31] Tenth Circuit Pattern Jury Instructions Criminal 1.20 (2025) (Caution — Punishment) (Non-Capital Cases).

**UNITED STATES' REQUESTED INSTRUCTION NO. 14[32]**

Evidence has been presented about a statement attributed to the defendant alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court. Such evidence should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training education, occupation, and physical and mental condition of the defendant, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine the statement is unreliable or not credible, you may disregard the statement entirely.

---

[32] Tenth Circuit Pattern Jury Instructions Criminal 1.25 (2021) (Voluntariness of Statement by Defendant).

**UNITED STATES' REQUESTED INSTRUCTION NO. 15**

<u>18 U.S.C. § 371 – Conspiracy to Defraud the United States</u>[33]

Defendant Stapleton and Defendant Johnson are charged in Count 1 with a violation of 18 U.S.C. § 371.

This law makes it a crime for two or more persons to conspire to defraud the United States or any of its agencies in any manner or for any purpose.

The defendants are charged with conspiring to defraud the United States by interfering with and obstructing the lawful governmental functions of the U.S. Department of Education in its provision of federal funds to state and local school districts for career and technical education (CTE) programs.

Title 18, United States Code, Section 371, makes it a crime for two or more persons to conspire to defraud the United States or any of its agencies in any manner or for any purpose.

The word "defraud" here is not limited to its ordinary meaning of cheating the government out of money or property; it also includes impairing, obstructing, defeating, or interfering with the lawful function of the government or one of its agencies by dishonest means.

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime," in which each member becomes the agent of every other member.

---

[33] The Tenth Circuit does not have a Pattern Criminal Jury Instruction for conspiring to defraud the United States, the second clause of 18 U.S.C. § 371. This instruction is therefore patterned after Pattern Crim. Jury Instr. 5th Cir. 2.15B (2024) but modified to conform with the typical introduction of other Tenth Circuit Pattern Criminal Jury Instructions outlining the elements of crimes.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: That the defendant and at least one other person made an agreement to defraud the government or one of its agencies, the U.S. Department of Education, using deceit, craft, trickery and dishonest means, to interfere with or obstruct the Department of Education's lawful function to provide money to state and local school districts for career and technical education (CTE) programs as charged in the indictment;

*Second*: That the defendant knew that the purpose of the agreement was to defraud the government and joined in it willfully, that is, with the intent to defraud; and

*Third*: That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

*Fourth*: That there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way that advances some purpose of a conspiracy, does not thereby become a conspirator.

### UNITED STATES' REQUESTED INSTRUCTION NO. 16

<u>18 U.S.C. § 666(a)(1)(B) – Accepting a Bribe</u>[34]

Defendant Stapleton is charged in Counts 2 through 6 of the indictment with violations of 18 U.S.C. § 666(a)(1)(B).

This law makes it a crime for a public official to accept a bribe.

To find Defendant Stapleton guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: the defendant was an agent of a local government, or any agency of that government, such as the Albuquerque Public Schools; and

*Second*: the defendant accepted or agreed to accept a thing of value from another person; and

*Third*: The defendant did so corruptly, that is, with the understanding that something of value is to be offered or given to influence or reward her in connection with her official duties; and

*Fourth*: The defendant acted with the intent to be influenced or rewarded in connection with some business, transaction or series of transactions of the government agency; and

*Fifth*: This business, transaction, or series of transactions involved a thing of a value of $5,000 or more; and

---

[34] The Tenth Circuit does not have a Pattern Jury Instruction for crimes under 18 U.S.C. § 666(a)(1)(B). This instruction is therefore modeled after Fed. Crim. Jury Instr. 7th Cir. 666(a)(1)(B)("Accepting a Bribe – Elements")(2025 Revisions) and Fed. Crim. Jury Instr. 7th Cir. 666(a)(1)(B)("Accepting a Bribe – Intent to be Influenced or Rewarded)(2025 Revisions). The instruction has been generally revised to more conform with the standard introduction and format of Tenth Circuit Pattern Jury Instructions (*e.g.*, by substituting the word "First" for the number "1" in listing the elements of the crime, etc.).

*Sixth*: The government agency in a one-year period, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance. The one-year period must begin no more than 12 months before the defendant committed these acts and must end no more than 12 months afterward.

A defendant acts with the "intent to be influenced or rewarded" if she accepted or agreed to accept a thing of value in exchange for an official act before taking the official act, and did so in connection with some business, transaction or series of transactions of the government agency. If the defendant has taken the official act before she accepted or agreed to accept the thing of value, then the defendant has not acted with the "intent to be influenced or rewarded."

Even if payment of the thing of value is provided after the official act, or is to be provided after the official act, the defendant acts with the "intent to be influenced or rewarded" so long as she accepted or agreed to accept the thing of value in exchange for the official act before taking the official act.

The defendant acts with the "intent to be influenced or rewarded" even if she would have taken the same official act anyway, so long as the defendant accepted or agreed to accept the thing of value in exchange for the official act before taking the official act.

**UNITED STATES REQUESTED INSITRUCTION 17**

<u>Meaning of the term "official act"</u>

The term "official act" in these instructions means any decision or action on any question or matter, which may at any time be pending, or which may by law be brought before any public official, in such public official's official capacity, or in such official's place of trust or profit.[35]

That decision or action may include using a public official's position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) –without more—does not fit the definition of an "official act."[36]

---

[35] 18 U.S.C. § 201(a)(3).

[36] *McDonnell v. United States*, 579 U.S. 550, 574 (2016).

**UNITED STATES' REQUESTED INSTRUCTION 18**

<u>18 U.S.C. § 666(a)(2) – Paying a Bribe</u> [37]

Defendant Johnson is charged in Counts 7 through 11 of the indictment with violations of 18 U.S.C. § 666(a)(2). This law makes it a crime to pay or offer to pay a public official a bribe.

To find Defendant Johnson guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: The defendant gave, offered, or agreed to give a thing of value to another person; and

*Second*: The defendant did so corruptly with the intent to influence or reward an agent of a local government, or any agency thereof in connection with some business, transaction, or series of transactions of the local government or government agency; and

*Third*: This business, transaction, or series of transactions involved a thing with a value of $5,000 or more; and

*Fourth*: That the local government or agency, in a one year period, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance. The one-year period must begin no more than 12 months before the defendant committed these acts and must end no more than 12 months afterward.

---

[37] The Tenth Circuit does not have a Pattern Jury Instruction for crimes under 18 U.S.C. § 666(a)(2). This instruction is therefore modeled on Fed. Crim. Jury Instr. 7th Cir. 666(a)(2)("Paying a Bribe – Elements")(2025 Revisions) and Fed. Crim. Jury Instr. 7th Cir. 666(a)(1)(B)("Paying a Bribe – Intent to Influence or Reward)(2025 Revisions). The introduction has been revised to more closely conform with the standard introduction to Tenth Circuit Pattern Jury Instructions.

A person acts corruptly when that person acts with the intent that something of value is given or offered to influence or reward an agent of a government or government agency in connection with the agent's official duties.

A defendant acts with the "intent to influence or reward" if he gave, offered or agreed to give a thing of value in exchange for an official act in connection with some business, transaction or series of transactions of the government or government agency.

Even if payment of the thing of value is provided after the official act, or is to be provided after the official act, the defendant acts with the "intent to influence or reward" so long as he gave, offered or agreed to give the thing of value in exchange for the official act.

The defendant acts with the "intent to reward" even if the agent would have taken the same official act anyway, so long as the defendant gave, offered or agreed to give the thing of value in exchange for the official act before the agent took the official act. If the agent has taken the official act before the defendant gave, offered or agreed to give the thing of value, then the defendant did not act with the "intent to reward."

## UNITED STATES' REQUESTED INSTRUCTION NO. 19[38]

<u>18 U.S.C. § 1341 – Mail fraud</u>

The defendants are charged in Counts 12 through 24 with violations of 18 U.S.C. section 1341.

This law makes it a crime to use the mails in carrying out either a scheme to defraud to obtain money or property or a scheme or artifice to defraud by depriving another of the intangible right to honest services.

To find the defendant guilty of the charges in Counts 12 through 24 you must be convinced that the government has proved each of the following four elements beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

*Second*: the defendant acted with specific intent to defraud;

*Third*: the defendant mailed something or caused another person to mail something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension.

An "intent to defraud" means an intent to deceive or cheat someone.

---

[38] Tenth Circuit Pattern Jury Instructions Criminal 2.56 (2026) (Mail Fraud 18 U.S.C. § 1341)(modified as indicated).

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false pretense is a representation of some fact or circumstance which is not true and is calculated to mislead. The representation may be implied from conduct, or may consist of concealment or non-disclosure where there is a duty to speak. A false pretense may consist of any act, word, symbol or token calculated and intended to deceive. It may be made either expressly, or by implication.[39]

A false pretense, representation or statement[40] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and

---

[39] *Bright v. Sheriff, Washoe Cnty.*, 90 Nev. 168, 170, 521 P.2d 371, 373 (1974). Black's Law Dictionary has used this language from *Bright* to define the term "false pretenses." *See Black's Law Dictionary*, 6th Ed. (1990)("false pretenses"). The Comments to the Tenth Circuit's Pattern Jury Instruction 2.56 for mail fraud recognize both that (1) "the same scheme may be charged as a scheme to defraud and a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises, or a scheme to deprive another of the intangible right to honest services," and (2) "an affirmative representation is not necessary to effect a scheme to defraud." Nonetheless, the fourth element of Pattern Instruction 2.56 contradictorily seems to suggest that the government must prove "false or fraudulent pretenses, representations, or promises" for every type of fraud scheme even when such a scheme is not charged in an indictment. That being the case, it is important for the jury to understand that a false pretense is a form of representation that may be implied from conduct and concealment or non-disclosure when there is a duty to speak.

[40] Given that not all fraud schemes require the government to prove an affirmative representation, Tenth Circuit Pattern Jury Instruction Criminal 2.56 (Comment), this paragraph of Tenth Circuit Pattern Jury Instruction 2.56 should include false pretenses as defined by *Bright* and not be restricted only to affirmative false statements.

that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen even though the defendant did not intend or request the mails to be used.

**UNITED STATES' REQUESTED INSTRUCTION NO. 20**

<u>Meaning of the term "scheme to defraud"</u>

As I have just explained, to find a defendant guilty of the mail fraud charges in Counts 12 through 24, you must be convinced that the United States has proved each of the four elements I have just described beyond a reasonable doubt. However, the first element –which requires you to find that the defendant devised or intended to devise a scheme to defraud—requires some additional explanation.

Counts 12 through 24 of the indictment charge the defendants with committing a fraud scheme in two different ways: First, the defendants are charged with participating in a scheme to obtain money or property. Second, the defendants are charged with participating in a scheme to defraud and deprive the citizens of New Mexico, Albuquerque Public Schools, and the U.S. Department of Education of the intangible right to honest services.[41] To find the defendants guilty, you can find that the defendants either participated in a scheme to defraud to obtain money or property, or that the defendants participated in a scheme to defraud and deprive the public and the government of the intangible right to honest services, or you can find that the defendants did both.

For a defendant to be guilty of the first element of a money or property scheme, you must find that the United States has proved that the defendant either knowingly devised or participated in a plan or course of action to deceive or cheat someone out of money or property.[42] A "scheme to defraud"

---

[41] Adapted from Fed. Crim. Jury Instr. 7th Cir. 1341, 1343 & 1346 (2023 ed.).

[42] Pattern Crim. Jury Instr. 11th Cir. OI O50.1(2025)(modified).

another of money or property means any plan, pattern, or course of action intended to deprive another

of money or property or bring about some financial gain to the person engaged in the scheme.[43]

For a defendant to be guilty of the first element of a mail fraud honest services fraud scheme,

you must find that the United States has proved that the defendant knowingly devised or participated

in a plan or course of action to deprive the public and the government of their to right to a public

official's honest services through bribes or kickbacks given or offered to a public official.

Public officials owe a fiduciary duty to the public. To owe a fiduciary duty to the public means

that the official has a duty of honesty and loyalty to act in the public's interest, not for his or her own

enrichment. When a public official devises or participates in a bribery or kickback scheme, that official

violates the public's right to his or her honest services. This is because the official outwardly purports

to be exercising independent judgment in official work, but instead has received benefits for the

outcome or deed. The public is defrauded because the public is not receiving what it expects and is

entitled to, namely, the public official's honest services.[44]

---

[43] Fifth Circuit Pattern Jury Instructions Criminal 2.57 (2019) (Wire Fraud: Money/Property or Honest Services 18 U.S.C. § 1343).

[44] Third Circuit 6.18.1341-3 (2024), Mod. Crim. Jury Instr. (modified); *See also*, *Skilling v. United States*, 561 U.S. 358, 408 n.41 (2010) (existence of fiduciary relationship between public official and public "beyond dispute"); *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008) (citing *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979)("When a public official has been bribed, he breaches his duty of honest, faithful and disinterested service. While outwardly purporting to be exercising independent judgment in passing on official matters, the official has been paid for his decisions, perhaps without even considering the merits of the matter. Thus, the public is not receiving what it expects and is entitled to, the public official's honest and faithful service."); *United States v. Nelson*, 712 F.3d 498, 509 (11th Cir. 2013) ("Public officials inherently owe a duty to the public to make governmental decisions in the public's best interest." (internal quotation marks and citations omitted)).

Additionally, the defendant himself need not be a fiduciary or public official: a private citizen, for instance, does not owe a duty of honest services to the public, but can be found guilty of honest services fraud if he devises or participates in a bribery or kickback scheme intended to deprive the public of its right to a public official's honest services.[45]

Bribery and kickbacks involve the exchange of a thing or things of value for official action by a public official, in other words, a *quid pro quo* (a Latin phrase meaning "this for that" or "these for those"). Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action. That is, for the payor, bribery and kickbacks include the offer or agreement to provide a thing of value to a public official in exchange for official action, whether or not the public official actually accepts the thing of value or agrees to perform the official action.[46]

The public official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. Rather, the intent to exchange may be established by circumstantial evidence, based upon the defendant's words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.[47]

---

[45] *McDonnell v. United States,* 2016 WL 860558 *67 (Joint Appendix of Jury Instructions).

[46] *United States v. McCabe*, 103 F.4th 259, 281 (4th Cir. 2024) (Instruction 55); *Evans v. United States*, 504 U.S. 255, 268 (1992).

[47] *United States v. McCabe*, 103 F.4th 259, 281-82 (4th Cir. 2024) (upholding nearly identical instruction and citing *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring) (In Hobbs Act case explaining; "The official and the payor need not state the *quid quo pro* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. The inducement from the official is criminal if it is express or if it is implied from his words and actions, so long as he intends to be so and the payor so interprets it."); *McDonnell v. United States*, 579 U.S. 550, 572-73 (2016) ("The agreement need not be explicit, and the public official need not specify the means he

Bribery and kickbacks require the intent to effect an exchange of money or other thing of value for official action, but each payment need not be correlated with a specific official act. The requirement that there be payment of a thing of value in return for the performance of an official act is satisfied so long as the evidence shows a "course of conduct" of things of value flowing to a public official in exchange for a pattern of official actions favorable to the donor. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the defendant intended to perform a set number of official acts in return for the payments. Thus, all that must be shown is that payments were made with the intent of securing a specific type of official action in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the public official will take specific official actions on the giver's behalf.[48]

---

will use to perform an 'official act.' So long as he agrees to do so. A jury could for example, conclude that an agreement was reached if the evidence shows that the public official received a thing of value knowing that it was given with the expectation that the official would perform an 'official act' in return… It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*. The jury may consider a broad range of pertinent evidence, including the nature of the transaction, to answer that question.").

[48] *See United States v. McCabe*, 103 F.4th 259, 283-84 (4th Cir. 2024) (upholding jury instruction stating that "a given thing of value need not be correlated with a specific official action" rather the thing of value "may be given with the intent to retain a public official's services on an as-needed basis, so that as opportunities arise the public official would take specific official action on the payor's behalf"). As the Fourth Circuit further explained in *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998):

Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. In other words, the intended exchange in bribery can be "this for these" or "these

It is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value. In other words, it is not a defense that the offer or promise of anything of value was made to the public official in exchange for an official action that is actually lawful, desirable, or even beneficial to the public. The offense of "honest services" fraud is not concerned with the wisdom or results of the public official's decisions, but rather with the manner in which the public official makes his or her decisions. [49]

---

for these," not just "this for that." Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor.

(Internal citations and quotations omitted). *See also United States v. McDonough*, 727 F.3d 143, 154 (1st Cir. 2014) (relying on *Jennings* to dispel defense argument that timing of payments precluded connection with acts of bribery, because bribery can be accomplished through an ongoing course of conduct,); *United States v. Terry*, 707 F.3d 607, 612 (6th Cir. 2013)("The agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts."); *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007)("like in the extortion cases, donors and recipients engaged in ongoing bribery schemes do not always spell out in advance the specific match between gift and act"); *United States v. Ciavarella*, 716 F.3d 705, 730 (3d Cir. 2013) (proof of bribery "does not require that each quid, or item of value, be linked to a specific quo, or official act" (internal citation omitted)); *United States v. Redzic*, 627 F.3d 683, 692 (8th Cir. 2011) ("[T]he government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct. It was not necessary for the government to link any particular payment to any particular action undertaken by [the defendant]." (citing *Jennings*)); *United States v. Whitfield*, 590 F.3d 325, 353 (5th Cir. 2009) (stating that "the overwhelming weight of authority from this court and our sister circuits supports the conclusion that the law does not require" a one-to-one linkage between payments and official acts (citing *Jennings*)); *United States v. Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009) (citing *Jennings*).

[49] 2 Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions, § 27.11 (6th ed. 2018), *available at* Westlaw (modified) ("official act" was lawful, desirable, or beneficial is no defense to 18 U.S.C. § 201 bribery prosecution); *United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004); *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid. (That is frequently the defense asserted to a criminal

**UNITED STATES' REQUESTED INSTRUCTION NO. 21**

26 U.S.C. § 7206(1) – False Statements on Income Tax Return[50]

Defendant Stapleton is charged in Counts 25 through 27 with violations of 26 U.S.C. section 7206(1).

This law makes it a crime for anyone willfully to make a false material statement on an income tax return.

To find the defendant guilty of these crimes you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant signed an income tax return that contained a written declaration that it was made under the penalties of perjury;

*Second*: the return contained a false statement; that is, the tax return reported that the defendant had zero taxable income whereas the defendant knew she had received the approximate amount of income as alleged in indictment;

*Third*: the defendant knew that statement was false;

*Fourth*: the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty;

*Fifth*: the statement was material; and

---

bribery charge—and though it is never valid in law, it is often plausible in fact.)"); *United States v. Jannotti*, 673 F.2d 578, 601 (3d Cir. 1982) ("[I]t is neither material nor a defense to bribery that had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation the (briber) wanted him to make.") (internal quotation marks omitted).

[50] Tenth Circuit Pattern Jury Instructions Criminal 2.03 (2026) (False Statements on Income Tax Return 26 U.S.C. § 7206(1))

*Sixth*: the defendant filed or caused someone to file the income tax return with the Internal Revenue Service.

The tax return must be false as to the matter stated in indictment. The government, however, is not required to prove that the defendant owed any additional tax for the year in question. A monetary loss to the government is not an element of this crime.

The fact that an individual's name is signed to a return means that you may find that the tax return was in fact signed by that individual, until and unless outweighed by evidence presented which leads you to a different conclusion.

If you find proof beyond a reasonable doubt that the defendant signed her tax return, you may, but are not required to, find that the defendant knew of the false matter in the return.

A statement is material under this law if it concerned a matter necessary to the correct computation of taxes owed and was capable of influencing the decision of the Internal Revenue Service.

**UNITED STATES' REQUESTED INSTRUCTION NO. 22**

<u>18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering (concealing illegal proceeds)</u>[51]

The defendants are charged in Counts 28 through 36 of the indictment with violations of 18 U.S.C. section 1956(a)(1)(B)(i).

This law makes it a crime knowingly to conceal or disguise the nature, location, source, ownership, or control of proceeds of specified unlawful activity.

To find a defendant guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: the defendant conducted or attempted to conduct a financial transaction;

*Second*: the financial transaction involved the proceeds of specify unlawful activity, that is Theft or Bribery Concerning Programs Receiving Federal Funds contrary to 18 U.S.C. § 666 or Mail Fraud contrary to 18 U.S.C. § 1341;

*Third*: the defendant knew that the property involved in the financial transaction or attempted financial transaction represented the proceeds of some form of unlawful activity; and

*Fourth*: the defendant conducted or attempted to conduct the financial transaction knowing that it was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity.

The term "conducts" includes initiating, concluding, or participating in initiating or concluding, a transaction.

The term "financial transaction" means:

---

[51] Tenth Circuit Pattern Jury Instructions Criminal 2.73.1 (2026) (Money Laundering Concealing Illegal Proceeds –18 U.S.C § 1956(a)(1)(B)(i)).

a transaction involving the use of a financial institution that is engaged in, or the activities of which affect, interstate commerce in any way or degree; or a transaction that in any way or degree affects interstate commerce, and that involves one or more monetary instruments.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through specified unlawful activity, including the gross receipts of such activity.

"Interstate commerce" means commerce or travel between the states, territories or possessions of the United States, including the District of Columbia. It is not necessary that the defendant have intended or anticipated an effect on interstate commerce. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce.

**UNITED STATES' REQUESTED INSTRUCTION NO. 23**

<u>18 U.S.C. § 1956(h) – Conspiracy to commit money laundering</u>[52]

The defendants are charged in Count 37 of the indictment with a violation of 18 U.S.C. section 1956(h).

This law makes it a crime to conspire to commit money laundering.

To find a defendant guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt:

*First*: two or more people agreed to accomplish the illegal objective of the conspiracy charged in Count 37;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily participated in the conspiracy; and

*Fourth*: there was interdependence among the members of the conspiracy, that is, the members in some way or manner, intended to act for their shared mutual benefit within the scope of the conspiracy charged.

---

[52] This instruction is adapted from *United States v. Derman*, 2021 WL 515883 *18-19 and n. 30 (D. Utah Feb. 10, 2021)(reciting jury instruction for Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), which, in turn, is adapted from Tenth Circuit Pattern Jury Instruction Criminal 2.19 (2026) (Conspiracy 18 U.S.C. § 371).

## UNITED STATES' REQUESTED INSTRUCTION NO. 24[53]

When the word "knowingly" is used in these instructions, it means the act was done voluntarily and intentionally, and not because of mistake or accident.

---

[53] Tenth Circuit Pattern Jury Instructions Criminal § 1.37 (2026) (Knowingly) (last two sentences of instruction omitted.

**UNITED STATES' REQUESTED INSTRUCTION NO. 25[54]**

In this case a Grand Jury returned an indictment in which the defendants are charged in Count 1 with Conspiracy to defraud the United States in violation of 18 U.S.C. § 371. In Counts 2 through 6 of the indictment, Defendant Stapleton is charged with accepting a bribe in violation of 18 U.S.C. § 666(a)(1)(B). Defendant Johnson is charged in Counts 7 through 11 of the indictment with paying a bribe in violation of 18 U.S.C. § 666(a)(2). Counts 12 through 24 of the indictment charge both Defendant Stapleton and Defendant Johnson with Mail Fraud in violation of 18 U.S.C. § 1341. In Counts 25 through 27 of the indictment Defendant Stapleton is charged with False Statements on Income tax returns in violation of 18 U.S.C. § 7206(1). In Counts 28 through 36, Defendant Stapleton and Defendant Johnson are charged with Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(ii). And in Count 37, Defendant Stapleton and Defendant Johnson are charged with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h).

As I told you at the outset of this trial, the indictment is simply the description of the charges made by the United States against the defendant; it is not evidence of guilt or anything else. The defendants pleaded not guilty and are presumed innocent. A defendant may not be found guilty by you unless all twelve of you unanimously find that the government has proved that defendant's guilt beyond a reasonable doubt. The indictment reads as follows:

The Grand Jury charges:

<u>Introduction</u>

---

[54] Tenth Circuit Pattern Jury Instructions Criminal § 1.01 (2026) (Re: Reading of indictment)(modified) 2026.

49

1.     At all times relevant to this Indictment, the defendant, **SHERYL WILLIAMS STAPLETON** was an agent of Albuquerque Public Schools (APS), a local government agency operating in Bernalillo County, in the District of New Mexico.

2.     **STAPLETON** also was a New Mexico State Representative for District 19 in Bernalillo County from 1995 until 2021.   In the New Mexico House of Representatives, **STAPLETON** served on various committees including the Education Committee, and was the majority floor leader from 2017 until 2021.

3.     The United States Department of Education provides hundreds of millions of dollars to state and local school districts for career and technical education (CTE) programs pursuant to the Carl D. Perkins Vocational and Technical Education Act[55] (the Perkins Act).   In New Mexico, Perkins funding goes to the New Mexico Public Education Department (NMPED), and NMPED then allocates the federal funds to school districts across the state.

4.     From at least 2013 through 2021, APS received more than $10,000 in federal Perkins funds from the U.S. Department of Education in each calendar year.

5.     In her official capacity at APS, **STAPLETON** was the Director of the Perkins Project and the CTE Coordinator.   It was her responsibility to allocate and administer the Perkins funds that APS received.

6.     Robotics Management Learning Systems (Robotics) is a Washington, D.C. company owned and operated by **STAPLETON**'s close personal friend, the defendant, **JOSEPH JOHNSON**.

---

[55] This term refers to a series of federal acts including the Carl D. Perkins Vocational and Technical Education Act of 1984 and its reauthorizations in 1990, 1998, 2006, and 2018.

Robotics held the software license and copyright for CyberQuest, a computer learning program that teachers can use in the classroom.

7.     From about July 1, 2013, through June 30, 2020, **STAPLETON** directed approximately 40% of APS's non-personnel grant CTE funding to Robotics for use of and support for the CyberQuest software in APS classrooms.   APS paid Robotics under a series of procurement exemptions and sole source contracts and, later, APS Purchase Agreement #15278, and a professional services agreement, which **STAPLETON** administered.

a.   Specifically, Robotics received approximately the following amounts from APS, most of which originated as federal Perkins funds, as described below:

| Year | Amount APS Paid to Robotics Overall | Amount of Perkins Funds APS Paid to Robotics |
|---|---|---|
| 04/17/2013 to 12/31/2013 | $295,500 | $135,500 |
| 2014 | $410,000 | $290,000 |
| 2015 | $348,000 | $348,000 |
| 2016 | $428,000 | $348,000 |
| 2017 | $388,000 | $308,000 |
| 2018 | $388,000 | $348,000 |
| 2019 | $266,950 | $266,950 |
| 2020 | $560,000 | $329,500 |
| 2021 | $167,100 | $144,600 |
| Total 2013-2021 | $3,251,550 | $2,518,550 |

b.   The teachers who used CyberQuest wrote the content for their classes, and Robotics contracted with a third party to maintain the software and to train the users.  Until 2019, the third party received payments directly from APS for its work regarding CyberQuest.

    c.  From 2013 through 2021, Robotics spent about $174,915 on personnel other than **JOHNSON**, and paid the third party contractor about $182,180 to support CyberQuest.  Including miscellaneous expenses and unclassified withdrawals, Robotics' business expenses for that time period totaled about $806,558, leaving the remaining 73% of the funds Robotics received from APS – approximately $2,444,992 – available for other uses.

8.     **STAPLETON** reviewed and approved Robotics' invoices, and directed other APS employees under her supervision to approve those invoices, thereby certifying that APS had received the services listed in the invoices and certifying that APS should issue payments as requested by the invoices.

9.     APS mailed its checks to Robotics to a post office box in Albuquerque.  **STAPLETON** personally retrieved the checks from the post office box and deposited them into the Robotics bank account.

10.    **STAPLETON** was provided with blank checks for the Robotics business checking account.  Approximately 234 Robotics checks were written for **STAPLETON's** benefit, totaling approximately $1,152,506.  In this manner, **STAPLETON** obtained approximately 35% of all funds APS paid to Robotics.  Specifically:

    a.  Approximately 60 checks totaling about $286,772.20 were written from Robotics to S. Williams & Associates, a company **STAPLETON** owned and controlled.

    b.  Approximately 56 checks totaling about $313,123.48 were written from Robotics to Taste of the Caribbean, an Albuquerque restaurant that **STAPLETON** owned and her family members operated.

c. Approximately 105 checks totaling about $479,960.86 were written from Robotics and deposited into accounts for the Ujima Foundation, a nonprofit entity that **STAPLETON** and **JOHNSON** were listed as operating together.

   i. **STAPLETON** and **JOHNSON** were listed as operating Ujima Foundation as a 501(c)(3) nonprofit corporation nominally dedicated to addressing educational, social, economic and health issues facing people of color in New Mexico.

   ii. **STAPLETON** and **JOHNSON** opened and maintained a bank account in the name of Ujima Foundation/Charlie Morrisey Foundation, for which they shared signature authority.

   iii. In annual reports filed with the New Mexico Secretary of State's Office and in Forms 990-EZ filed with the IRS, **STAPLETON** identified members of the Ujima Foundation board of directors.  Several of the individuals they identified were not affiliated with Ujima Foundation and did not know they were listed as board members.

   iv. Over the time period in which **STAPLETON** deposited about $479,960.86 into the Ujima accounts, Ujima Foundation distributed about $46,700 in scholarships.  The majority of the remaining funds went to **STAPLETON**'s benefit or was withdrawn in cash.

d. **STAPLETON** wrote about 12 checks totaling about $72,649.16 from Robotics to other parties providing goods and services to **STAPLETON**, including for a remodeling of **STAPLETON**'s house.

11.     The 233 checks from Robotics paid to **STAPLETON**'s benefit, which totaled approximately $1,152,506, were not business expenses for Robotics.  Instead, **STAPLETON** accepted the checks and the money intending to be influenced and rewarded in connection with the APS contracts with and payments to Robotics.

12.     Numerous federal and state regulations and policies prohibit a governmental employee involved in the selection, award, or administration of a contract from receiving any financial benefits, including bribes, kickbacks, gifts, and anything of monetary value, from a contractor, including:

      a.  Title 2 C.F.R. § 200.318 et seq., general procurement standards for non-Federal entities receiving federal funds;

      b.  The New Mexico Governmental Conduct Act, NMSA 1978 § 10-16-1 et seq.; and

      c.  The Albuquerque Public Schools Employee Code of Conduct.

13.     The New Mexico Financial Disclosure Act, NMSA 1978 § 10-16A-1 et seq., requires that a person holding state legislative office must disclose all sources of gross income over $5,000 each calendar year that person holds office.  Despite this obligation, **STAPLETON** never disclosed the substantial income she received from Robotics.

<u>Count 1:  Conspiracy to Defraud the United States</u>

14.     Paragraphs 1 through 13 are hereby incorporated by reference.

15.     From about 2013, and continuing thereafter until about July 2021, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, knowingly and willfully conspired and agreed together, and acted interdependently with each other, to defraud the United States of and concerning its governmental functions and rights to have its business and its affairs, and particularly the transaction of the official business of the U.S.

Department of Education, conducted honestly and impartially, free from corruption, fraud, improper and undue influence, and dishonesty.

Manner and Means

16.     It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the U.S. Department of Education in that the defendants would:

a.   Conceal their financial relationship by omitting that relationship from required certifications and disclosures;

b.   Sponsor and advocate for the passage of state legislation and capital outlays directing funding to APS for CTE programs;

c.   Allocate and direct APS CTE funding to Robotics;

d.   Invoice for, approve, facilitate, and deposit payments to Robotics in excess of services rendered and in excess of contract limits;

e.   Share and distribute proceeds using blank checks and pre-signed checks;

f.   Conceal distribution of proceeds by passing them through corporate bank accounts, including accounts in the names of S. Williams & Associates; Taste of the Caribbean; and Ujima Foundation;

g.   Maintain the Ujima Foundation, a registered nonprofit organization, as a vehicle to conceal and distribute proceeds; and

h.   Conceal income from disclosure on Internal Revenue Service tax forms and submissions.

Overt Acts

55

17.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of New Mexico and elsewhere:

a. On or about January 15, 2019, **STAPLETON** co-sponsored House Bill 91, the Career Technical Education Pilot Project, which the legislature passed and the governor signed into law on March 15, 2019. This legislation created a new career technical education fund and caused NextGen state flow-through grant funds to pass through NMPED to the APS CTE department. Of these funds, Robotics received approximately $108,000 via APS contract #15278 and the Professional Service Agreement;

b. On or about January 24, 2019, **JOHNSON** submitted a proposal in response to APS Request for Proposals (RFP) 19-032 RMS, offering to provide CyberQuest software, training, and support to APS and certifying that there was no conflict of interest;

c. On or about April 4, 2019, after **STAPLETON**'s request, the legislature passed and the governor signed into law SB 280, appropriating in relevant part $1,628,227 in capital outlay funds to APS for CTE programs;

d. On or about June 4, 2019, APS and **JOHNSON** on behalf of Robotics entered into Professional Service Agreement #15278 for the provision of CyberQuest software, maintenance and technical support, professional development and software customizations, and certified that there was no conflict of interest;

e. On or about April 20, 2020, APS and **JOHNSON** on behalf of Robotics added an Amendment to Professional Service Agreement #15278, extending the contract;

f.  On or about May 20, 2021, **STAPLETON** on behalf of APS and **JOHNSON** on behalf of Robotics entered into a Professional Service Agreement for the provision of CyberQuest workshops and training;

g.  On or about July 21, 2021, **JOHNSON** on behalf of Robotics signed a second Amendment to Professional Service Agreement #15278, purporting to extend the contract;

h.  On or about the dates listed below, **STAPLETON** directed APS to issue purchase orders to encumber the funds for RMLS and approved them, each direction constituting a separate overt act:

| Purchase Order Date | Purchase Order # | Amount |
|---|---|---|
| June 13, 2019 | 181921249 | $266,950 |
| October 28, 2019 | 192008402 | $64,200 |
| February 3, 2020 | 192014614 | $145,000 |
| January 28, 2020 | 192013705 | $144,000 |
| April 17, 2020 | 192020707 | $85,500 |
| April 20, 2020 | 192021379 | $145,000 |
| January 27, 2021 | 202108937 | $208,200 |
| June 4, 2021 | 202110227 | $60,000 |

i.  **JOHNSON** created and **STAPLETON** approved invoices from Robotics to APS, as described below, each invoice constituting a separate overt act:

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| June 3, 2019 | 903715 | $266,950 |
| February 2, 2020 | 916110 | $145,000 |
| February 6, 2020, February 8, 2020, February 11, 2020, and February 27, 2020 | 916586 | $28,250 |
| March 28, 2020 | 917917 | $19,500 |
| April 30, 2020 | 919058 | $88,750 |

57

| Invoice(s) Dated | Resulting APS Check Number | Amount |
|---|---|---|
| May 7, 2020 | 919483 | $15,000 |
| May 19, 2020 | 920349 | $85,500 |
| June 1, 2020, and June 3, 2020 | 921597 | $33,000 |
| September 4, 2020 | 923877 | $145,000 |
| March 14, 2021 | 931894 | $7,500 |
| April 6, 2021 | 933185 | $9,000 |
| March 25, 2021 | 933746 | $74,400 |
| June 18, 2021, June 21, 2021, and June 23, 2021 | 936513 | $76,200 |

j.  On or about June 23, 2021, **STAPLETON** and **JOHNSON** created and approved invoices 8240, 8241, and 8242 from Robotics to APS, each in the amount of $7,500 and each constituting an overt act;

k.  On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the deposits of the following checks into the Robotics bank account, each constituting a separate overt act:

| Deposited On or About | APS Check Number | Amount |
|---|---|---|
| June 18, 2019 | 903715 | $266,950 |
| March 2, 2020 | 916110 | $145,000 |
| March 27, 2020 | 916586 | $28,250 |
| April 20, 2020 | 917917 | $19,500 |
| May 21, 2020 | 919058 | $88,750 |
| May 21, 2020 | 919483 | $15,000 |
| June 19, 2020 | 920349 | $85,500 |
| July 14, 2020 | 921597 | $33,000 |
| October 13, 2020 | 923877 | $145,000 |
| May 11, 2021 | 931894 | $7,500 |
| May 11, 2021 | 933185 | $9,000 |
| May 11, 2021 | 933746 | $74,400 |
| July 6, 2021 | 936513 | $76,200 |

l.  On or about the dates listed below, **STAPLETON** and **JOHNSON** provided, issued, and deposited the following checks from the Robotics bank account into accounts in **STAPLETON**'s control, each constituting a separate overt act:

| Robotics Check # | Check Dated | Deposited | Payee | Amount |
|---|---|---|---|---|
| 4072 | April 27, 2020 | May 1, 2020 | Charlie Morrisey Foundation | $3,800 |
| 4070 | May 14, 2020 | May 15, 2020 | Charlie Morrisey Foundation | $5,000 |
| 4073 | June 5, 2020 | June 12, 2020 | Ujima Foundation | $8,000 |
| 4076 | July 1, 2020 | July 14, 2020 | Ujima Foundation | $8,000 |
| 4075 | August 17, 2020 | August 24, 2020 | Ujima Foundation | $8,000 |
| 4081 | September 15, 2020 | October 13, 2020 | Ujima Foundation | $8,000 |
| 4080 | December 1, 2020 | December 21, 2020 | Charlie Morrisey Foundation | $8,000 |

m.  On or about January 31, 2020, **STAPLETON** filed a financial disclosure statement with the New Mexico Office of the Secretary of State, certifying that APS was her sole source of income in 2019;

n.  On or about the dates listed below, **STAPLETON** filed tax returns, IRS Form 1040, each constituting a separate overt act, in which she omitted income she received directly and indirectly from **JOHNSON** and Robotics, and therefore received tax refunds:

| Tax Year | Date Filed | Total Income Reported | Refund Amount |
|---|---|---|---|
| 2015 | May 21, 2018 | $39,123 | $7,231 |

| Tax Year | Date Filed | Total Income Reported | Refund Amount |
|---|---|---|---|
| 2016 | May 18, 2020 | -$11,500 | $14,553 |
| 2017 | July 15, 2020 | -$1,922 | $13,496 |
| 2018 | August 20, 2020 | $7,178 | $10,855 |

o.  On or about the dates listed below, **STAPLETON** and **JOHNSON** caused the filing of an IRS Form 990EZ on behalf of Ujima Foundation, each containing materially false and fraudulent representations and each constituting a separate overt act:

| Tax Year | Date Filed |
|---|---|
| 2017 | January 22, 2020 |
| 2018 | February 18, 2021 |
| 2019 | February 18, 2021 |

p.  On or about the dates listed below, **JOHNSON** filed tax returns, IRS Form 1040, omitting income he received from Robotics and APS, each containing materially false and fraudulent representations, and each constituting a separate overt act:

| Tax Year | Date Filed |
|---|---|
| 2013 | May 14, 2019 |
| 2014 | December 17, 2015 |
| 2020 | October 20, 2021 |

In violation of 18 U.S.C. § 371.

### Count 2-6:  Bribery Concerning Programs Receiving Federal Funds

18.  Paragraphs 1 through 17 are hereby incorporated by reference.

19.  At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year

period beginning January 1, 2020, and ending December 31, 2020.  Defendant was an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs.  On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, did corruptly accept and agree to accept a thing of value from JOSEPH JOHNSON, to wit:  the Robotics Management Learning Systems business bank account checks identified below, intending to be influenced and rewarded in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|-------|--------------------|-------------|-----------|--------|
| 2 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 3 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 4 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 5 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 6 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

In violation of 18 U.S.C. § 666(a)(1)(B).

### Counts 7-11:  Bribery Concerning Programs Receiving Federal Funds

20.     Paragraphs 1 through 17 are hereby incorporated by reference.

21.     At all times material to this indictment, Albuquerque Public Schools was an agency of a state or local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020, and ending December 31, 2020.  SHERYL WILLIAMS STAPLETON was an agent of APS whose duties included managing the federal Perkins program and coordinating APS's Career Technical Education (CTE) programs.  On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **JOSEPH JOHNSON**, did corruptly give, offer, and agree to give a thing of value to STAPLETON, to wit:  the Robotics Management

61

Learning Systems business bank account checks identified below, intending to influence and reward her in connection with a transaction and series of transactions of APS involving $5,000 or more:

| Count | Robotics Check No. | Check Dated | Deposited | Amount |
|-------|--------------------|-------------|-----------|--------|
| 7 | 4073 | June 5, 2020 | June 12, 2020 | $8,000 |
| 8 | 4076 | July 1, 2020 | July 14, 2020 | $8,000 |
| 9 | 4075 | August 17, 2020 | August 24, 2020 | $8,000 |
| 10 | 4081 | September 15, 2020 | October 13, 2020 | $8,000 |
| 11 | 4080 | December 1, 2020 | December 21, 2020 | $8,000 |

In violation of 18 U.S.C. § 666(a)(2).

Counts 12-24:  Mail Fraud; Money and Property and Honest Services Fraud

22.    Paragraphs 1 through 17 are hereby incorporated by reference.

23.    From on or about 2013, and continuing to about July 2021, in the District of New Mexico, and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, devised and intended to devise a scheme and artifice (1) to defraud the citizens of New Mexico, Albuquerque Public Schools, and the U.S. Department of Education of money and property and (2) to defraud and deprive the same of their right to the honest and faithful services of **STAPLETON** through bribery, kickbacks, and the concealment of material information.

24.    The purpose of the scheme and artifice was for **STAPLETON** to and **JOHNSON** to obtain money and property and for **STAPLETON** to secretly use her official positions to enrich herself by soliciting and accepting gifts, payments, and other things of value from **JOHNSON** in exchange for favorable official action, and for **JOHNSON** to enrich himself by secretly obtaining favorable official action for himself and his company, Robotics Management Learning Systems, through corrupt means.

25.     The scheme and artifice was carried out in the following manner and means, among others:

a.  **STAPLETON** solicited and accepted gifts, payments, and other things of value totaling approximately $1,152,506 from **JOHNSON**.

b.  **STAPLETON** provided favorable official action on behalf of **JOHNSON** as requested and as opportunities arose, including sponsoring, advocating for, and requesting legislation and capital outlays; requesting exemptions from procurement and sole source procurements; and creating, approving, and directing others to enter purchase orders and approve invoices in excess of contract limits and in excess of services rendered.

c.  **STAPLETON** took steps to hide, conceal, and cover up her activity and the nature and scope of her dealings with **JOHNSON**, including omitting the income she received from **JOHNSON** from her financial disclosures and tax returns, signing **JOHNSON**'s name on checks, and passing proceeds through business entities she controlled.

d.  **JOHNSON** took steps to hide, conceal, and cover up his activity and the nature and scope of his dealings with **STAPLETON**, including by certifying a lack of conflict of interest on proposals and agreements, omitting income from Robotics on his tax returns, providing blank Robotics checks, pre-signing checks to be used for **STAPLETON**'s benefit, and passing proceeds through business entities **STAPLETON** controlled.

26.     On or about the dates listed below, in the District of New Mexico and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, caused another person to mail checks from APS to Robotics through the United States Postal Service, as described below:

| Count | Deposited On or About | APS Check Number | Amount |
|-------|----------------------|------------------|--------|
| 12 | June 18, 2019 | 903715 | $266,950 |
| 13 | March 2, 2020 | 916110 | $145,000 |
| 14 | March 27, 2020 | 916586 | $28,250 |
| 15 | April 20, 2020 | 917917 | $19,500 |
| 16 | May 21, 2020 | 919058 | $88,750 |
| 17 | May 21, 2020 | 919483 | $15,000 |
| 18 | June 19, 2020 | 920349 | $85,500 |
| 19 | July 14, 2020 | 921597 | $33,000 |
| 20 | October 13, 2020 | 923877 | $145,000 |
| 21 | May 11, 2021 | 931894 | $7,500 |
| 22 | May 11, 2021 | 933185 | $9,000 |
| 23 | May 11, 2021 | 933746 | $74,400 |
| 24 | July 6, 2021 | 936513 | $76,200 |

In violation of 18 U.S.C. §§ 1341, 1346, and 2.

Counts 25-27:  Fraud and False Statements

27.    On or about the dates below, in the District of New Mexico, in Bernalillo County, and elsewhere, the defendant, **SHERYL WILLIAMS STAPLETON**, willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service false U.S. Individual Income Tax Returns, Forms 1040, for the tax years identified below, verified by written declarations that the returns were made under the penalties of perjury, and which the defendant, **SHERYL WILLIAMS STAPLETON**, did not believe to be true and correct as to every material matter.  Those tax returns reported that the defendant had zero taxable income, whereas, as the defendant knew, she had received the approximate amounts of income described below from Robotics:

| Count | Date | Tax Year | Approximate amount of income received from Robotics |
|-------|------|----------|------------------------------------------------------|
| 25 | May 9, 2018 | 2015 | $186,553.94 |
| 26 | July 9, 2020 | 2017 | $133,392.04 |

| 27 | August 6, 2020 | 2018 | $150,056.70 |
|----|----------------|------|-------------|

In violation of 26 U.S.C. § 7206(1).

### Counts 28-36:  Money Laundering

28.     On or about the dates listed below, in the District of New Mexico, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, writing and depositing checks from the Robotics business account as described below, which involved the proceeds of a specified unlawful activity, that is, violations of 18 U.S.C. §§ 666 and 1341, while acting with the knowledge that the transaction was designed in whole or part to disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Check Dated | Check Posted | Robotics Check No. | Payee | Amount |
|-------|-------------|--------------|--------------------|-------|--------|
| 28 | August 19, 2019 | September 9, 2019 | 4071 | Ujima Foundation | $1,500 |
| 29 | April 27, 2020 | May 1, 2020 | 4072 | Charlie Morrisey Foundation | $3,800 |
| 30 | May 14, 2020 | May 15, 2020 | 4070 | Charlie Morrisey Foundation | $5,000 |
| 31 | June 5, 2020 | June 12, 2020 | 4073 | Ujima Foundation | $8,000 |
| 32 | July 1, 2020 | July 14, 2020 | 4076 | Ujima Foundation | $8,000 |
| 33 | August 17, 2020 | August 24, 2020 | 4075 | Ujima Foundation | $8,000 |
| 34 | September 15, 2020 | October 13, 2020 | 4081 | Ujima Foundation | $8,000 |
| 35 | December 1, 2020 | December 21, 2020 | 4080 | Charlie Morrisey Foundation | $8,000 |
| 36 | July 1, 2021 | July 6, 2021 | 4077 | Ujima Foundation | $8,000 |

65

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

Count 37:  Conspiracy to Commit Money Laundering

29.    Paragraphs 1 through 17 are hereby incorporated by reference.

30.    From on or about 2013, and continuing to about July 2021, in the District of New Mexico, and elsewhere, the defendants, **SHERYL WILLIAMS STAPLETON** and **JOSEPH JOHNSON**, did knowingly combine, conspire, and agree to act interdependently with each other to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

  a.  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Theft or Bribery Concerning Programs Receiving Federal Funds contrary to 18 U.S.C. § 666 and Mail Fraud contrary to 18 U.S.C. § 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Manner and Means

31.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

66

a.  It was part of the conspiracy that the defendants concealed their continuing financial relationship in order to facilitate the flow of APS funds to Robotics;

b.  It was further part of the conspiracy that the defendants created and approved Robotics invoices to APS in excess of services actually rendered;

c.  It was further part of the conspiracy that the defendants wrote, endorsed and deposited checks from the Robotics bank account to entities under **STAPLETON**'s control, including S. Williams & Associates, Taste of the Caribbean, and Ujima Foundation, and to third parties for **STAPLETON**'s benefit;

d.  It was further part of the conspiracy that the defendants created, maintained, and used Ujima Foundation and its bank accounts in order to conceal the source, ownership and control of funds as charitable activity;

e.  It was further part of the conspiracy that the defendants concealed the flow of funds from APS to Robotics to **STAPLETON** by filing false tax returns and failing to file tax returns.

In violation of 18 U.S.C. § 1956(h).

**UNITED STATES' REQUESTED INSTRUCTION NO. 26[56]**

In a moment, you will be escorted to the jury room and each of you will be provided with a copy of the instructions I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson who will help guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

---

[56] Tenth Circuit Pattern Jury Instructions Criminal 1.23 (2026) (Duty to Deliberate — Verdict Form).

68

Remember at all times, you are judges – judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the Court Security Officer.  I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

69

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No.  24-CR-00375-JB
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SHERYL WILLIAMS STAPLETON,⠀⠀)
and JOSEPH JOHNSON⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀)

**V E R D I C T**

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Conspiracy to Defraud the United States, as charged in Count 1 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Conspiracy to Defraud the United States, as charged in Count 1 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 2 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 3 of the indictment.

70

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 4 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 5 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 6 of the indictment.

WE, THE JURY, find the defendants, JOSEPH JOHNSON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 7 of the indictment.

WE, THE JURY, find the defendants, JOSEPH JOHNSON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 8 of the indictment.

WE, THE JURY, find the defendants, JOSEPH JOHNSON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 9 of the indictment.

WE, THE JURY, find the defendants, JOSEPH JOHNSON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 10 of the indictment.

WE, THE JURY, find the defendants, JOSEPH JOHNSON, _____ (guilty or not guilty) of Bribery Concerning Programs Receiving Federal Funds, as charged in Count 11 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 12 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 12 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 13 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 13 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 14 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 14 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 15 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 15 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 16 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 16 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 17 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 17 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 18 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 18 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 19 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 19 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 20 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 20 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 21 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 21 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 22 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 22 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 23 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 23 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 24 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Mail Fraud, as charged in Count 24 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Fraud and False Statements, as charged in Count 25 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Fraud and False Statements, as charged in Count 26 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Fraud and False Statements, as charged in Count 27 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 28 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 28 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 29 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 29 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 30 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 30 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 31 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 31 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 32 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 32 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 33 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 33 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 34 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 34 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 35 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 35 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 36 of the indictment.

WE, THE JURY, find the defendant, JOSEPH JOHNSON, _____ (guilty or not guilty) of Money Laundering, as charged in Count 36 of the indictment.

WE, THE JURY, find the defendant, SHERYL WILLIAMS STAPLETON, _____ (guilty or not guilty) of Conspiracy to Commit Money Laundering, as charged in Count 37 of the indictment.

WE, THE JURY, find the defendants JOSEPH JOHNSON, _____ (guilty or not guilty) of Conspiracy to Commit Money Laundering, as charged in Count 37 of the indictment.

_____
FOREPERSON

76